# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| WENDY UNTERSHINE and BONNIE MEYER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> CENTRAL CREDIT SERVICES LLC, <br><br> Defendant. | Case No.: 18-cv- <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Wendy Untershine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Bonnie Meyer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiffs, debts allegedly incurred for personal, family, or household purposes.

6. Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

7. Defendant Central Credit Services LLC ("CCS") is a foreign limited liability company with its principal place of business located at 9550 Regency Square Blvd, Suite 500, Jacksonville, Florida 32225.

8. CCS does substantial business in Wisconsin and maintains a registered agent for service of process at C T Corporation System, 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

9. CCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. CCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

11. CCS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts relating to Plaintiff Untershine*

12. On or about August 17, 2017, Synchrony Bank ("Synchrony") mailed Plaintiff Untershine a credit card account statement regarding an alleged debt Untershine owed to Synchrony for purchases and other charges incurred as a result of the use of her Wal-Mart store-branded credit card. A copy of this account statement is attached to this Complaint as Exhibit A.

2

13. Exhibit A contains the following:

| Payment Information | |
|---|---:|
| New Balance | $1,833.19 |
| Amount Past Due | $131.00 |
| Total Minimum Payment Due | $224.00 |
| Overlimit Amount | $33.19 |
| Payment Due Date | 09/09/2017 |

Exhibit A.

14. Exhibit A states that, as of August 17, 2017, Untershine's alleged Wal-Mart credit card account with an account number ending in 4316 had a "New Balance" of $1,833.19, with an "Amount Past Due" of $131.00, a "Total Minimum Payment Due" of $224.00," and a "Payment Due Date" of September 9, 2017.

15. On or about August 20, 2017, Synchrony mailed a debt collection letter to Untershine regarding her alleged Wal-Mart credit card account ending in 4316. A copy of this letter is attached to this Complaint as Exhibit B.

16. Exhibit B contains the following:

Dear Wendy M Untershine,

September 4, 2017 is the LAST DAY FOR PAYMENT.
$131.00 is the AMOUNT NOW DUE.

You are late in making your payment(s). If you pay the AMOUNT NOW DUE (above) by the LAST DAY FOR PAYMENT (above), you may continue with the contract as though you were not late. Payment should be sent to us at the address set forth below. If you do not pay by this date, we may exercise our rights under the law.

Exhibit B.

17. Exhibit B states that "$131.00 is the AMOUNT NOW DUE."

18. Exhibit B further states that Untershine could return her account to a current status by paying the "AMOUNT NOW DUE" by September 4, 2017.

3

19. Exhibit B further states that, if Untershine did not return her account to a current status by September 4, 2017, Synchrony "may exercise [its] rights under the law," *i.e.,* accelerate the debt.

20. The "AMOUNT NOW DUE" stated in Exhibit B is the "Amount Past Due" stated in Exhibit A.

21. On or about September 15, 2017, Synchrony mailed Untershine a credit card account statement to Plaintiff regarding the same alleged debt. A copy of this account statement is attached to this Complaint as Exhibit C.

22. Exhibit C contains the following:

| Payment Information | |
|---|---|
| New Balance | $1,906.50 |
| Amount Past Due | $224.00 |
| Total Minimum Payment Due | $317.00 |
| Overlimit Amount | $106.50 |
| Payment Due Date | 10/09/2017 |

Exhibit C.

23. Exhibit C states that, as of September 15, 2017, Untershine's alleged Wal-Mart credit card account with an account number ending in 4316 had a "New Balance" of $1,906.50, with an "Amount Past Due" of $224.00, a "Total Minimum Payment Due" of $317.00," and a "Payment Due Date" of October 9, 2017.

24. On or about September 18, 2017, Defendant mailed Untershine a debt collection letter regarding Plaintiff's alleged "Walmart Credit Card Account." A copy of this letter is attached to this Complaint as Exhibit D.

25. The alleged debt referenced in Exhibit D was Untershine's Wal-Mart credit card account with an account number ending in 4316, and the alleged debt was incurred for personal, family or household purposes, including purchases of household goods from Wal-Mart.

4

26. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Untershine inserted by computer.

27. Upon information and belief, Exhibit D is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

28. Upon information and belief, Exhibit D was the first letter Defendant sent to Untershine regarding this alleged debt.

29. Exhibit D contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit D.

30. Exhibit D also contains the following:

> **Account Information**
> Creditor: Synchrony Bank
> Re: Walmart Credit Card Account
> Account #: XXXXXXXXXXXX4316
> Central Credit Services #: ▮▮▮▮9991
> Total Account Balance: $1,906.50
> Amount Now Due: $ 317.00

Exhibit D.

31. Exhibit D states that, as of September 18, 2017, the alleged debt had a "TOTAL ACCOUNT BALANCE" of $1,906.50 and an "AMOUNT NOW DUE" of $317.00.

32. Exhibit D is false, deceptive, misleading, and confusing to the unsophisticated consumer.

5

33. The unsophisticated consumer has previously received letters from the creditor that indicate the "amount now due" is the "amount past due." *Compare* Exhibits A and B.

34. Exhibit D states that the "AMOUNT NOW DUE" is the "Total Minimum Payment Due" stated in Exhibit C.

35. There is a difference between the "Amount Past Due" and the "Total Minimum Payment Due." The "Total Minimum Payment Due" is the sum of the "amount past due" and the minimum payment, which is not itself due until the "Payment Due Date."

36. It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

37. Thus, under *Barnes*, Defendant cannot attempt to collect portions of the balance that are "owed" to Synchrony but are not yet "due." 493 F.3d at 840 ("only the past due amount, the amount owed [to the debt collector], can be the amount of the debt . . . ."); *see also* 15 U.S.C. § 1692e(2)(a) (prohibiting misrepresentations about the legal status of a debt).

38. Moreover, there is a difference between the minimum amount due and the past due amount, and Advanced Call's use of the phrase "AMOUNT NOW DUE" is confusing and misleading to the unsophisticated consumer because it is inconsistent with Sychrony's use of the phrase "AMOUNT NOW DUE." *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n. (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

6

39. Upon information and belief, the purpose of Defendant's conduct – attempting to collect the "Total Minimum Payment Due" rather than the "Amount Past Due" – is to increase its profits under false pretenses.

40. Upon information and belief, Defendant, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.")

41. Upon information and belief, if a consumer pays Defendant an amount greater than the "Amount Past Due," Defendant is still entitled to retain a portion of that recovery.

42. Untershine was confused by Exhibit D.

43. The unsophisticated consumer would be confused by Exhibit D.

44. Untershine had to spend time and money investigating Exhibit D, and the consequences of any potential responses to Exhibit D.

### *Facts relating to Plaintiff Meyer*

45. On or about March 8, 2018, CCS mailed Plaintiff Meyer a debt collection letter regarding an alleged debt owed to "Stoneberry." A copy of this letter is attached to this Complaint as Exhibit E.

46. Upon information and belief, the alleged debt referenced in Exhibit E was incurred as the result of the purchase of goods from stoneberry.com, an online retailer and division of Mason Companies, Inc., for personal, family, and household purposes.

47. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Meyer inserted by computer.

7

48. Upon information and belief, Exhibit E is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

49. Upon information and belief, Exhibit E was the first letter Defendant sent to Meyer regarding this alleged debt.

50. Exhibit E contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail a copy of such judgment or verification to you. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

51. Exhibit E also includes the following representations:

> **ACCOUNT IDENTIFICATION**
> Current Creditor: Stoneberry
> Orig. Creditor: Stoneberry
> Account: ▮▮▮▮6885    C2G
> Balance: $584.27
> Reference #: ▮▮▮▮0248

52. Additionally, Exhibit E states:

> If your balance is not in question, you may send us the balance of your account by check, or money order using the return envelope provided. Additionally, we can accept credit card and check by phone payments.

53. By qualifying the demand for payment included in Exhibit E with the statement "If your balance is not in question," CCS undermines the reliability of the amount of the debt stated in its letter.

54. Furthermore by qualifying the demand for payment included in Exhibit E with the statement "If your balance is not in question," CCS overshadows the validation notice.

8

55. By demanding payment unless the balance is in question, <u>Exhibit E</u> implies that the only valid dispute that would trigger a consumers verification rights would be a dispute as to the balance of the debt.

56. In reality, there are a number of valid reasons a consumer may dispute an alleged debt beyond the accuracy of the balance. For example, CCS may have dunned the wrong person or the balance of the debt may be owing but not yet due.

57. Meyer was confused, misled, and deceived by <u>Exhibit E</u>.

58. The unsophisticated consumer would be confused, misled, and deceived by <u>Exhibit E</u>.

### ***The FDCPA***

59. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such

9

practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

60. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage

10

Case 2:18-cv-01422-DEJ   Filed 09/11/18   Page 10 of 18   Document 1

consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

62. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

63. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

64. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

65. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, chare, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

66. 15 U.S.C. § 1692g states:

> a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

67. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might

11

Case 2:18-cv-01422-DEJ    Filed 09/11/18    Page 11 of 18    Document 1

be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

68. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### *The WCA*

69. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

70. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

71. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

12

72. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

73. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

74. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

75. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

76. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

13

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

77. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

78. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

79. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

80. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## **COUNT I – FDCPA**

81. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Count I is brought on behalf of Plaintiff Untershine.

83. Defendant misrepresented the "Amount Now Due" on Untershine's Synchrony account. *Compare* Exhibits A and B *with* Exhibits C and D.

84. Exhibit B, mailed shortly after Exhibit A, states that the "Amount Now Due" corresponds to the "Amount Past Due" stated in Exhibit A.

85. Exhibit D, mailed shortly after Exhibit C, states that the "Amount Now Due" corresponds to the "Total Minimum Payment Due" stated in Exhibit C.

86. Exhibit D states that the "Amount Now Due" as of September 18, 2017 was $317.00 but, as the term "Amount Now Due" was used by Synchrony, the actual "amount now due" was $224.00. Exhibit C.

87. The unsophisticated consumer would be misled to believe that her account had a past due amount of $317.00 as of the date of Exhibit D. In fact, as of the date of Exhibit D, Untershine could have brought her account current by paying the "Amount Past Due," $224.00, and paying an additional $93.00 approximately three weeks later.

88. At a minimum, the consumer would be confused as to whether payment of $224.00 or $317.00 would bring her account current. *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n. (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

89. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II -- FDCPA

90. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91. Count II is brought on behalf of Plaintiff Meyer.

92. By qualifying the demand for payment included in Exhibit E with the statement "If your balance is not in question," CCS undermines the reliability of the amount of the debt stated in its letter.

93. Furthermore by qualifying the demand for payment included in Exhibit E with the statement "If your balance is not in question," CCS overshadows the validation notice.

15

94. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(b).

**COUNT III – WCA**

95. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96. Count III is brought on behalf of Plaintiff Untershine.

97. Defendant misrepresented the "Amount Now Due" on Plaintiff's Synchrony account. *Compare* Exhibits A and B *with* Exhibits C and D.

98. Exhibit B, mailed shortly after Exhibit A, states that the "Amount Now Due" corresponds to the "Amount Past Due" stated in Exhibit A.

99. Exhibit D, mailed shortly after Exhibit C, states that the "Amount Now Due" corresponds to the "Total Minimum Payment Due" stated in Exhibit C.

100. Exhibit D states that the "Amount Now Due" as of September 18, 2017 was $317.00 but, as the term "Amount Now Due" was used by Synchrony, the actual "amount now due" was $224.00. Exhibit C.

101. The unsophisticated consumer would be misled to believe that her account had a past due amount of $317.00 as of the date of Exhibit D. In fact, as of the date of Exhibit D, Untershine could have brought her account current by paying the "Amount Past Due," $224.00, and paying an additional $93.00 approximately three weeks later.

102. At a minimum, the consumer would be confused as to whether payment of $224.00 or $317.00 would bring her account current. *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n. (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

103. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

104. Plaintiff brings this action on behalf of two Classes

105. Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by <u>Exhibit D</u> to the complaint in this action, (c) seeking to collect a credit card account debt owed to Synchrony Bank, (d) which debt was incurred for personal, family or household purposes (e) between September 11, 2017 and September 11, 2018, inclusive, (f) that was not returned by the postal service. Plaintiff Untershine is the proposed class representative of Class I.

106. Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by <u>Exhibit E</u> to the complaint in this action, (c) seeking to collect an alleged debt that was incurred for personal, family or household purposes (e) between September 11, 2017 and September 11, 2018, inclusive, (f) that was not returned by the postal service. Plaintiff Meyer is the proposed class representative of Class II.

107. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

108. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

109. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

110. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

111. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

112. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 11, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com